## BACH *v.* COHN.

A bankrupt discharged from his debts under the act of Congress of 19 August, 1841, is still bound *in foro conscientiæ,* and this obligation is a sufficient consideration for a new promise. C. C. 1752. But there can be no legal obligation to pay such debts without a new agreement, which may be verbal, or be proved by presumptions where the known fact on which the presumption rests draws after it the unknown fact as an almost necessary consequence. C. C. 1810, 2267. The presumption must be precise, and inapplicable to other circumstances than those intended to be established.

APPEAL from the District Court of Jefferson, *Clarke,* J. *Larue,* for the plaintiff. *Brewer,* for the appellant. The judgment of the court was pronounced by

SLIDELL, J. This suit is brought upon two notes, signed by the defendant to the order of, and endorsed by, *H. C. W. Mithoff,* dated in 1841. The defendant pleads in bar of the action his certificate and discharge in bankruptcy, in

BACH
v.
COHN.

1843, under the act of Congress. The only question which this cause presents is, whether, since his discharge, a new promise to pay has been made by the defendant.

A witness offered by the plaintiff testifies, "that, in 1844, the defendant asked him whether he would endorse for the amount of $500, being the amount which he owed to *Mr. Bach*—witness refused to endorse. *Cohn* owed this amount to *Bach* for two notes which said *Bach* held against him, and had received in payment for two lots sold to *Henry Mithoff.* The request of *Cohn* to witness, to endorse for that amount, was reiterated several times. Does not recollect hearing any conversation between *Bach* and *Cohn* on this subject. Defendant appeared willing to pay *Bach* the amount, and desired to pay him." This witness, on his cross examination, states that he had never seen the notes before their exhibition to him at the trial of the cause; but that he knew the notes given to *Bach* for the two lots, were drawn by *Cohn*, and endorsed by *H. W. C. Mithoff*, but was not able to say that they were the identical notes sued upon. Another witness, *Henry Mithoff*, identifies the notes as the same given in payment by him, the witness, to *Bach*, for some real estate purchased by himself of *Bach*. This is the only testimony offered by the plaintiff to destroy the effect of the bankrupt's certificate and discharge. The court below gave judgment for the plaintiff, and the defendant has appealed.

The decree of the bankrupt court, as embodied in the certificate, is that *Cohn* is fully discharged from all his debts, owing by him at the time of the presentation of his petition to be declared a bankrupt, to wit: on the 28th January, 1843. This decree and certificate follow the act of Congress. Their effect was, in the language of the lawgiver, a full and complete discharge of the debt in question. The act of Congress in this particular appears substantially to have followed the bankrupt system in England, and we may therefore with propriety look to the decisions of the english courts in ascertaining the legal effect of this discharge.

Upon an examination of them it will be found that, the effect of the certificate may be avoided by a new contract, entered into *bonâ fide* by the bankrupt after his discharge; and that as the debt, notwithstanding the legal discharge, is due *in foro conscientiæ*, the moral duty is deemed a sufficient consideration to support the new promise. But we have met with no case in the english authorities in which any thing less was deemed sufficient in avoidance, than direct proof of a new contract.

In *Lyruby* v. *Wightman*, 5 Esp. 198, the action was assumpsit for money lent. There was a plea of the general issue and bankruptcy. It appears by the report of the case that the plaintiff meant to rely on a new promise to pay, made by the bankrupt subsequent to his bankruptcy, and for that purpose was giving evidence of general declarations by the bankrupt that he would pay every body, and that his effects would pay twenty shillings in the pound, but there was no specific promise whatever proved to have been made to the plaintiff. Lord *Ellenborough* said, "that in order to bind a bankrupt, by a new promise he should expect a positive and specific promise to pay, not given in such general terms as it was offered here," In *Fleming* v. *Hayne*, 1 Starkie, 370, the same learned judge again held, in even stronger terms, that the promise to pay must be distinct and unequivocal.

Even thus guarded, the rule seems not to have proved consistent with the spirit of the bankrupt system, or with public policy. It was probably found to

open a door to perjury, or at least to be dangerous in exposing discharged bankrupts to a new responsibility, upon unguarded promises made upon the impulse of moral duty. Hence we find that by the 131st sec. of 6 Geo. 4, c. 16, it was provided that, no bankrupt should be liable to pay any debt from which he shall have been discharged by his certificate, unless such promise be made in writing, and signed by the bankrupt.

It is certain that a bankrupt discharged under our statute is still bound in the forum of conscience. It is also true that this moral obligation is a sufficient consideration for a new promise. Civil Code, art. 1752. But it is equally true that no legal obligation can arise to pay the discharged debt without a new agreement, which agreement, though it may be made verbally, requires, like any other, the consent of the parties. This indeed is not disputed by the counsel for the plaintiff. He acknowledges that there must be a new agree-· ment. He also acknowleges that no positive promise has been directly proved in this case. But he contends that the agreement may be established by circumstantial evidence, and that the facts proved amount to such evidence.

There is certainly such a thing as presumptive evidence of a contract; but it is equally true that those presumptions which are not established by law but are left to the discretion of the judge, must, in the language of the Code, be weighty, precise, and consistent—graves, précises, et concordantes. Civil Code, 2267, 1810. The known fact on which the presumption, reposes must draw with it the unknown fact, as an almost necessary consequence. The presumption must be precise, and not susceptible of application to other circumstances than those which it is sought to establish. See Rogron, 1352. Here the facts from which we are asked to presume a new agreement between the plaintiff and the defendant amount to this: that the defendant, in repeated conversations with the witness, out of the presence of the plaintiff, asked the witness if he would endorse for him for the amount of $500, which he owed *Bach* on two notes held by him, appearing to be willing to pay *Bach* and desiring to pay him; which request the witness refused. This certainly does not necessarily draw with it the presumption that, at the time of the conversation, the defendant had already promised to pay the discharged debt. It is consistent with the hypothesis that he spoke of the debt as one due in good conscience, and merely contemplated a settlement of the claim in the form of two notes endorsed by the witness; and that intention might well be coupled with some contemplated gain to himself, upon thus renewing an obligation from which in law he was fully liberated. If such conversations of a certificated bankrupt, had with a third persons out of the presence of the creditor, were received by courts of justice as proof of a new promise, bankrupt certificates would speedily become waste paper, which the framers of the bankrupt law certainly did not contemplate. It is not for us to consider the wisdom or justice of that statute. We must look to the object and policy of the law, and not defeat the intention of the legislator by reviving a discharged debt upon vague and inconclusive presumptions.

Judgment reversed, and judgment for defendant, with costs in both courts.