HELEN KAUFFMAN, Appellant, v. W. C. LOGAN, Administrator, Appellee.

APPEAL AND ERROR: Review—Questions of Fact, Verdicts, and
1  Findings—Findings of Trial Court. Where a jury is waived, the finding of the trial judge has the effect of a verdict.

EVIDENCE: Relevancy, Materiality, and Competency—Transac-
2  tions with Deceased. Sec. 3340, Code Supp., 1913, provides that the burden of proof that a claim is unpaid shall not be placed

upon the parties filing a claim against an estate; and therefore, notwithstanding Sec. 4604, Code, 1897, prohibiting testimony as to transactions with deceased persons, in an action on a' claim against an estate, where the defense introduced a check for $200, made by decedent to claimant, which had on its face, "$300 due on demand in full of all demands to date," and which was cashed by her, testimony of the plaintiff that, when she accepted the check and cashed it, the quoted words were not on the check, was competent, although speaking of a personal transaction with decedent, as such testimony was the flat. negation of the adverse party's evidence.

EXECUTORS AND ADMINISTRATORS: Allowance and Payment
3   of Claims—Burden of Proof. On a claim against a decedent's estate, the administrator has the burden of proving an accord and satisfaction as to the claim.

BILLS AND NOTES: Requisites and Validity—Material Alteration.
4   A material alteration of a note, appearing on its face, is presumed to have been made after delivery, and it is for the payee to explain it.

EVIDENCE: Presumptions—Probative Value. A rebuttable pre-
5   sumption being contested by proof of facts to the contrary, which are denied, the presumption loses its probative value, unless the evidence is equal on both sides, in which case it should turn the scale. Presumptions can stand only when compatible with the conduct of those to whom it may be sought to apply them, and must give place, when in conflict with clear, distinct, and convincing proof.

EVIDENCE: Documentary—Canceled Check. On a claim against
6   a decedent's estate, a decedent's check, made to claimant and cashed by her, was admissible as against her, and was not subject to objection that it was self-serving, and not binding upon claimant.

EVANS, J., dissents.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

OCTOBER 27, 1919.

PLAINTIFF made claims against the estate of the administrator's decedent, Parkhurst. The matter was tried to the court, with jury waived. The administrator consent-

ed to an allowance of $300. The trial court made such allowance, and denied all other relief. Plaintiff appeals.— *Reversed and remanded.*

*Mears & Lovejoy* and *J. C. Murtagh,* for appellant.

*Pike, Sias & Zimmerman,* for appellee.

SALINGER, J.—I. The original petition was a declaration in *quantum meruit,* alleging that, for services rendered C. J. Parkhurst, deceased, in his lifetime, his estate was indebted to the claimant in the sum of $4,186, with interest. An amendment to the claim alleged that the services were rendered as nurse and housekeeper, and under a written contract with decedent wherein he agreed that, if claimant should stay with him and act as his housekeeper and nurse during the balance of his lifetime, claimant was to have all the property of every kind and nature of which said Parkhurst should die seized; it alleged further that claimant performed her part of the contract, and has always stood ready, willing, and able to perform all of her part thereof in every respect, and that, by virtue of her said compliance, she is entitled to an order upon the defendant administrator to pay to her all and the entire estate of the said Parkhurst. In addition to a general denial, the defendant pleaded a settlement, and accord and satisfaction. He alleges that these were effectuated by a payment from Parkhurst to claimant of the sum of $200 cash, and making an agreement to pay $300 more upon demand, and that he has been at all times ready, able, and willing to pay the said $300. The cause was tried to the court without a jury, and judgment was given in favor of claimant in the sum of $300, with interest, with the statement "that in all other respects said claim is not allowed."

If the record indicated that the trial judge had weighed and acted on evidence of the value of the services performed by claimant, then the insistence on this appeal that

the allowance is too small would compel us

**1. APPEAL AND ERROR: questions of fact, verdicts, and findings: findings of trial court.** to test the propriety of the allowance by the rule that, where jury is waived, the finding of the judge has, on appellate review, the effect of a verdict. But this rule of review has no scope here, because we are satisfied that the judgment below did not concern itself with the value of said services. We base this conclusion on the fact that on no theory of the evidence can it be found that the allowance made should be $300. Such award is justified only on finding that there had been a settlement. The award is precisely the sum which defendant tendered as being due on settlement. It follows that we are to review nothing save whether the court erred in finding that the settlement and accord and satisfaction set up by defendant was established. The defense put in a check for $200, made by decedent to plaintiff. It appears she cashed

**2. EVIDENCE: relevancy, materiality, and competency: transactions with deceased.** it. Upon its face, decedent wrote the following: " $300 due on demand in full of all demands to date." The administrator tendered $300, and the total allowance made plaintiff by the court is $300. Its judgment has here the standing of a verdict. If this endorsement on the check were all the evidence, the finding below could not be disturbed. But that is not all of the evidence. The plaintiff testifies positively that, when she accepted the check and cashed it, the quoted words were not on the check.

II.  There is dispute on whether proper objection was made to this testimony. We will assume, for present discussion, that a proper objection raised that this testimony is prohibited by Section 4604 of the Code of 1897. That being so, it is to be said that, if *In re Estate of Brown*, 92 Iowa 379, at 388, rules, the objection is good. The case has not been overruled. Many decisions recognize that, as to

the points ruled on in them, the *Brown* case is authority.
See *Frick v. Kabaker,* 116 Iowa 494, at 507; *In re Estate of
Perkins,* 109 Iowa 216; *Van Sickle v. Staub,* 155 Iowa 472,
at 479; *Tucker v. Anderson,* 172 Iowa 277, at 290. It may,
however, be reasonably claimed that, as to the point we are
now considering, the holding of *Brown's* case has been
greatly qualified, if not overruled. *Campbell v. Collins,* 133
Iowa 152; *Erwin v. Fillenwarth,* 160 Iowa 210, at 216; and
see *Cousins v. Jackson,* 52 Ala. 262; *Sweet v. Low,* 28 Hun
(N. Y.) 432. In other words, it may well be doubted wheth-
er an inquiry as to the condition of a writing at a stated
time calls for prohibited testimony, even if answer to it
might raise an inference that there was a personal trans-
action between witness and a person deceased. But, for
reasons presently to be stated, we may assume that *In re
Estate of Brown* was rightly decided. When decided, the
ruling statute was Section 2410 of the Code of 1873. It
provided merely that all claims not expressly admitted un-
der the signature of the executor and approved by the court
should be considered as denied. This put upon claimants
the burden of proving subsistence and nonpayment of their
claim. This being the effect of the statute, the most that
*In re Estate of Brown* decided is that, where the claimant
has the burden of showing that his claim subsists, and is
neither settled nor paid, he may not testify that his demand
remains unsettled and unpaid, by saying that something
which indicates settlement and payment was created by
decedent without consent of the claimant. This holding
rests on the then existing statute law, which put evidence
of nonpayment under ban. It does not, of course, touch
statute law made since. The *Brown* case was decided on
October 25, 1894. On April 11, 1896, Chapter 75, Acts of
the Twenty-sixth General Assembly, became effective. It
added a proviso that "the burden of proof that a claim
is unpaid shall not be placed upon the parties filing a

claim " And the statute law that governs on this appeal is Section 3340 of the Code of 1897, which has the said proviso. This change in statute is recognized in *Murphy v. McCarthy,* 108 Iowa 38; *University v. Emmert,* 108 Iowa 500, at 503; and *Graham v. McKinney,* 147 Iowa 164, at 166. And, as said, upon the effect of this change the *Brown* case, of course, does not touch. We cannot know how it would have been decided, had said proviso been in the law at the time of its decision. No decision by us has passed upon the point we have: how the change in statute has affected proof on the issue of nonpayment. All that is ruled by *In re Will of Winslow,* 146 Iowa 67, at 70, is that the offer of a will in a contest upon its probate, which will declares that a legatee has received all that would be coming to him "in any manner" from the estate of testator, would not permit that legatee to testify whether or not he had received any money or property from the estate of testator. The support of the holding is cases which define what is "testimony," as used in the statute which allows the claimant to testify when "testimony" of the decedent is put in by the executor, and which cases hold, say, that books of the decedent put in are not "testimony," in the sense of said statute. To that effect is *Mehlisch v. Mabie,* 180 Iowa 450, at 460. It rests on *Canaday v. Johnson,* 40 Iowa 587, decided years before the statute change was made. It gives no consideration to that change, and the case (*Mehlisch*) does not involve and does not deal with proof of payment or nonpayment. Whether, in view of said change in statute, the putting in of anything by the executor is necessary to let the claimant testify to nonpayment, or what put in by the executor will open the door to claimant, we have never determined.

How should it be determined? Before the change, claimant could prove nonpayment by nothing but testimony other than his own. Can it be that, despite the change

which puts the burden on negativing satisfaction upon defendant, that, in dealing with that issue, plaintiff is still limited to testimony other than his own? So to hold is to hold that the amending of the statute was not intended to have any substantial effect. Surely, it was not intended, in putting this burden on the executor, that such evidence as he put in to discharge the burden could not be met save by such testimony as could, before he had that burden, be used to prove nonpayment. The only reasonable interpretation is that the legislature realized the danger of failure of justice that existed because, in most cases, nonpayment could be proved only by testimony which the statute shut out, and that the intent was to remove that danger. On any other construction, the desire to avoid a miscarriage of justice might well augment the possibilities of such a miscarriage. Suppose the executor put in a witness who testified he heard decedent say to claimant, and claimant agree, that the claim being tried had been satisfied. Can it be that claimant may not be heard to testify that decedent did not so claim, or that claimant did not assent, or both? Of course, such testimony speaks to a personal transaction or communication. It is no answer to say that the statute would open the door in such case. As seen, that occurs only where it is "testimony" of the *decedent* that is put in. But, owing to the change in statute, is it not inevitable that such denial is admissible? It matters little whether we reach the conclusion that this appellant's testimony was competent by holding that the ban upon it has been removed, or hold that the statute change opens the door to her testimony's being used in rebuttal. It is competent on either theory. Speaking to just such testimony (that in the *Brown* case), we said, in *Tucker v. Anderson,* 172 Iowa 277, at 291:

"These words were there or they were not there. If they were there, it tended to show full payment to the

plaintiff by the decedent in the form of this check received and cashed by the plaintiff."

And in *Sheldon v. Thornburg*, 153 Iowa 622, at 629, we ruled that, where the executor offered testimony to support his assertion of payment, it was proper to charge that he had the burden of maintaining that assertion by a preponderance. This makes the situation plain. When the executor put in the endorsement to prove accord and satisfaction, he was addressing himself to the burden existing law puts upon him. Testimony that no such endorsement was on the check when same was accepted and cashed is a flat negation of the evidence offered to prove payment, and goes to preponderance, and, as said, was competent.

III. What of its effect? No witness contradicts it. If, then, there be nothing that weakens the testimony of plaintiff, this judgment which rests alone upon the claimed endorsement cannot stand. There is no direct impeachment of plaintiff. Nothing in the record impeaches her. On the contrary, the record tends to support her denial of the endorsement. She had refused a check like the one under consideration. It is testified to by witnesses other than plaintiff, and undisputed, that plaintiff served Parkhurst as housekeeper and nurse for more than five years; that the services were most laborious and disagreeable; that they were worth thousands of dollars. If the allowance made stands, and is a measure of the value of the services, plaintiff has received, for these thousands of dollars' worth of service, her board and lodging and $500. We are not reviewing a fact decision. We are merely amplifying why the testimony of plaintiff is not discredited.

3-a

In the state of the pleadings, we are not called upon to inquire whether the alleged accord and satisfaction is enforcible. See *Gross v. Wallen*, 182 Iowa 429. Under the

issues, it suffices if the court was justified by the evidence in finding that the check, when accepted, was in its present state.

The defendant had the burden of proving the accord and satisfaction alleged by him. Can we hold that he has discharged that burden? We have examined the check. Its condition tells nothing as to when the endorsement was made on it. A material alteration of a note appearing on its face is presumed to have been made after delivery, and it is for the payee to explain it. *Wilson v. Henderson,* 9 S. & M. (Miss.) 375; *Hill v. Cooley,* 46 Pa. St. 259. Defendant has no evidence save a so-called presumption that the check is now in the same condition that it was in when plaintiff accepted same.

3. EXECUTORS AND ADMINISTRATORS: allowance and payment of claims: burden of proof.

We say "so-called" presumption, because what appellees invoke is, in truth, not a presumption, but an argument by inference. Such a "presumption" is an inference as to the existence of the fact not actually known, arising from its usual or necessary connections with others which are known. Lawson on Presumptive Evidence (1st Ed.) 555.

4. BILLS AND NOTES: requisites and validity: material alteration.

"Presumptions of fact are, at best, but mere arguments, and are to be judged by the common and received tests of the truth of propositions and the validity of arguments." *Lawhorn v. Carter,* 11 Bush (Ky.) 7; *Bach v. Cohn,* 3 La. Ann. 101.

5. EVIDENCE: presumptions: probative value.

They are said to be "but mere arguments, of which the major premise is not a rule of law * * * and are to be judged by the common and received tests of the truth of propositions and the validity of arguments." 1 Greenleaf on Evidence (16th Ed.), Section 44.

What there is of the particular presumption relied on

in this case is weakened beyond such presumptions gener-
ally. The argument that the endorsement was made before
delivery is weakened by the fact that such endorsement is
beneficial to the one who bases a defense upon it. *Maybee
v. Sniffen*, 2 E. D. Smith (N .Y.) 1; *Huntington v. Finch
& Co.*, 3 Ohio St. 445; *Pullen v. Shaw*, 3 Dev. (N. C.) 238.
In *Jordan v. Stewart*, 23 Pa. St. 244, 246, it was said:

"But when a contest occurs, and the instrument is of-
fered in evidence, the question at once arises whether the
alteration is beneficial to the party offering it; if it be not,
* * * the prima-facie presumption is unchanged. If it
be, * * * we do not presume a forgery, but we hold the
party offering it in evidence and seeking advantage from
it bound to explain the alteration to the satisfaction of a
jury."

It is material that the alteration is apparently against
the interest of the one asserting it. *Bailey v. Taylor*, 11
Conn. *531; *Wilson v. Henderson*, 9 S. & M. (Miss.) 375.
Again, if the interlineation appears in the same handwrit-
ing with the original instrument, and bears no evidence on
its face of having been made subsequent to the execution of
the instrument, and especially if it only makes clear what
was the evident intention of the parties, it will be presumed
to have been made in good faith, and before execution. *Cox
v. Palmer*, 1 McCrary (U. S.) 431. Paraphrased, this means
that it is against the so-called presumption when, as here,
the endorsement works an unreasonable benefit to the one
who urges it. And, once again, it is entitled to considera-
tion that such an endorsement as the one here is not usual-
ly written upon checks. They are negotiable paper. In
*Heffner v. Wenrich*, 32 Pa. St. 423, it is held that the maker
of negotiable paper is always presumed, in the absence of
evidence, to have issued it clear of all blemishes, erasures,
and alterations, and the burden of showing that it was de-
fective when issued is upon the holder, even though the

alteration be beneficial to the maker. In *Simpson v. Stack-house*, 9 Pa. St. 186, it was said:

"It is of no little weight, too, that the altered instrument is found in his hands, and that no person else can be called on to speak of it; for, without a presumption to sustain him, the maker would, in every case, be defenseless. It may be said that the holder with such a presumption against him will also be defenseless. But it was his fault to take such a note. As notes and bills are intended for negotiation, and as payees do not usually receive them when clogged with impediments to their circulation, there is a presumption that such an instrument starts fair and untarnished, which stands until it is repelled."

And where the maker denies under oath that the instrument was as it is when he made it, there is no presumption, and the holder must show that there is no alteration. *Walters v. Short*, 10 Ill. 252.

IV. Now, what is the status of an argument so impaired, when it is met by affirmative rebuttal in no wise discredited? Such inferential argument works not more than that a fact otherwise doubtful may be inferred from a fact which is proved. It authorizes courts or juries to draw a particular inference from a particular fact or from particular evidence, unless and until the truth of such inference is disproved. Lawson on Presumptive Evidence (1885) 555.

"Presumptions of fact are conclusions drawn from particular circumstances. They are such as are found by experience to be usually consequent upon or coincident with the facts presumed, and either do not arise, or are rebutted, if they do not correspond with, or are not adequate to account for, the circumstances actually proved." *Sutphen v. Cushman*, 35 Ill. 186, 187.

On affirmative rebuttal, "the presumption of law loses all that it had of mere arbitrary power, and must necessari-

ly be regarded only from the standpoint of logic and reason, and valued and given effect only as it has evidential character." *Graves v. Colwell*, 90 Ill. 612, 615. A rebuttable presumption being contested by proof of facts showing otherwise, which are denied, the presumption loses its value, unless the evidence is equal on both sides, in which case it should turn the scale. Lawson on Presumptive Evidence (1885) 576. Presumptions can only stand when compatible with conduct of those to whom it may be sought to apply them, and still more must give place when in conflict with clear, distinct, and convincing proof. *Whitaker v. Morrison*, 1 Fla. 25.

The exact question is not a new one in this jurisdiction. It was first before the court in *Schaefer v. Anchor Mut. F. Ins. Co.*, 133 Iowa 205. There, a pleading of the plaintiff admitted that a deed had been delivered to her. The admission forfeited the policy upon which she was suing. She withdrew this pleading, and the defendant put it in evidence. Thereupon, the plaintiff testified that the deed was handed to her after the death of the grantor, by one who had no authority from the grantor; also, that she had not authorized the making of said admission in pleading. The attorney who filed said pleading testified in corroboration. The defendant urged that this testimony, on one side, and the presumption that the attorney acted on authority, and that a deed found with the grantee was duly delivered, on the other, made a conflict for a jury. We said:

"But counsel concede that all the affirmative evidence on the question shows, without controversy, that the deed was not delivered to Mrs. Schaefer until after her father's death. The facts being undisputed, we do not see that there was anything to be submitted to the jury. Counsel contend that the fact of the deed being in possession of Mrs. Schaefer after her father's death raised a presumption

that it was delivered to her at the time of its execution; but this was a mere presumption, and was conclusively negatived by the evidence. It cannot be said, in view of the affirmative evidence, that the naked presumption raised any conflict which should have been submitted to the jury."

Next, it was complained that the court struck the reply in which the admission was made, and which defendant put in evidence. We held that the exclusion was harmless, because "the jury would not have been justified in disregarding" said affirmative showing. In *Corbin v. McAllister,* 144 Iowa 71, at 79, the *Schaefer* case is cited for the proposition that the presumption of delivery arising from finding a deed in the possession of grantee is overcome by clear and satisfactory evidence. In *State v. Butler,* 186 Iowa 1247, we gave the *Schaefer* case and the rationale of the question extended consideration. We there said:

"It may be conceded that, if the State had no evidence except this presumption, it alone cannot sustain a conviction, if against it there be undisputed and credible evidence that, notwithstanding such presumption, the liquor was carried for a lawful use. * * * Both defendants testify, without direct contradiction or impeachment, that the liquor was intended for such use only. If this testimony has nothing to weaken it, then, on the authority of *Schaefer v. Anchor Mut. F. Ins. Co.,* 133 Iowa 205, * * * the defendants are entitled to an acquittal. This is sound, both in logic and on authority. The statute presumption does not create a new rule of evidence: it merely enlarges the application of a rule of evidence. It is a member of the family to which belongs the presumption that a deed found in the possession of the grantee was duly delivered about the time at which it is dated, and that an admission in pleading made by an attorney is authorized. In the *Schaefer* case, we held that both these presumptions are over-

come, as matter of law; if, against the presumption, it is shown, without dispute or impeachment, that the deed was not handed over until after the decease of the grantor, and that the admission of its delivery made in the pleadings was unauthorized, and made under a mistake of fact. We say that the presumption for the time the deed was delivered and for the authority as to making admissions in pleading is 'a mere presumption' and 'that, in view of the affirmative evidence,' it may not be said 'the naked presumption raised any conflict which should have been submitted to the jury.' Logic supports authority in this respect. There can be no conflict between two things if both may be true, and if neither contender denies what the other asserts. The one who asserts the presumption as evidence does not claim that what should be presumed did, in fact, happen. He merely asserts that it happens so very often that it may be deemed to have happened in a particular instance, unless the contrary is made to appear. The other party does not deny that the thing in question does usually happen, and may be assumed to have happened in the particular case, but asserts that, in fact, it did not happen in that case. There is no claim in rebuttal that the particular thing did, in fact, happen."

When we say that the testimony in rebuttal of the presumption must be unimpeached, that does not mean there is a conflict between presumptions on the one hand and the affirmative rebuttal on the other, merely because the witnesses who testify in rebuttal are interested witnesses. They were that in the *Schaefer* case. The rebuttal was made by the plaintiff, who was vitally interested in having it held that, despite the admission in pleading, the deed from her father to her had not, in law, been delivered. The other witness was the attorney who had made the admission in pleading, and who joined the plaintiff in saying that the pleading was not authorized by her, and that the attorney

was not informed of the facts when he made said admission.

4-a

If that be'not a true rule, some curious results might ensue. Proof of cohabitation raises a "presumption" that the parties are married. Could a finding of marriage be sustained upon such presumption, where both parties testified and introduced certificates to show that they each were married to someone other than the other? There is a "presumption" that one who kills another is sane. Could that stand against record evidence that, on the day before the homicide, the defendant was an inmate of a state asylum for the insane, on commitment made two days before the homicide? There is a "presumption" that, where two are of the same name, the older is the maker of a note signed in that name. But that will not stand if there be undisputed testimony that the younger signed the note. *Graves v. Colwell,* 90 Ill. 612, 615.

The plaintiff objected to the check, in effect, that it was self-serving, and not binding upon her. The objection is not tenable. The check itself, with plaintiff's endorsement showing it had been paid to her, and all found on that check, was prima-facie evidence against her. She could not substitute the objection for counter evidence. Moreover, the objection was not ruled on. But all this does not change that, upon the counter proof, the judgment below is not supported by the evidence.

6. EVIDENCE: documentary: canceled check.

In view of the conclusions reached, it is not necessary to pass upon the contest as to what constitutes a sufficient objection to assert Section 4604 of the Code, and upon the effect of reserved rulings when no ruling is later made.

The judgment will be reversed. If the evidence remains the same, the defense of settlement will fail. And

the cause must be determined on the issues of *quantum meruit* and of contract.—*Reversed and remanded.*

LADD, C. J., WEAVER, GAYNOR, and PRESTON, JJ., concur.

EVANS, J. (dissenting in part). I do not agree that the testimony of the plaintiff as a witness concerning the check should be deemed conclusive of the fact thus testified to. It makes only a jury question. The fact that it is not contradicted does not render it conclusive. The only person who could contradict it is dead. She knew that when she testified. Her credibility is necessarily in issue. The case is not one of destroying a mere presumption by direct evidence, as claimed in the opinion, but it is a case of destroying a written instrument by oral evidence. The writing itself contradicts the oral evidence.