**LEATUTUFU of Tula, Plaintiff**

**v.**

**IULI of Tula, Defendant**

No. 62-1948

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Matatula" in Tula]

February 18, 1948

A. A. MORROW, *Chief Justice;* PULETU and MULI, *District Judges.*

DECISION

Heard at Fagatogo on February 13, 1948.
Atofau for Leatutufu; Pele S. for Iuli.

MORROW, *Chief Justice.*

Iuli offered certain land in Tula for registration as the communal land of the Iuli family, the offer being accompanied by a survey of the land. Leatutufu filed an objection to the proposed registration claiming the land as the communal land of the Leatutufu family. Hence this litigation. Section 905 of the A. S. Code.

The evidence as to the use and occupation of the land prior to World War II was in serious conflict. However, there is no dispute as to its having been occupied and used by the Marines during the war; nor is there any dispute as to Leatutufu's having been in possession of it since the Marines left it about the end of the war. The evidence conclusively shows that after the Marines moved out Leatutufu put in bananas, pandanus and new coconuts on the tract; that he has kept the new plantations in order and that in 1947 he built a Samoan fale on a cement platform built by the Marines on the land.

The present possession of the land by Leatutufu creates a presumption that he is its owner. *Bradshaw v. Ashley,* 180 U.S. 59, 63; I Jones on Evidence (4th Ed.) 133; 20

Am.Jur. 231. Mr. Wigmore in his monumental work on evidence says that "where title to *land* becomes material, the fact of present possession alone may serve to create a presumption of ownership . . ." Wigmore on Evidence (3rd Ed.) Section 2515. We held to the same effect in *Amituanai v. Tuli*, No. 52-1948 (Am. Samoa).

Leatutufu, aged 62, testified Leatutufu Niu Lelea had possession when the Government was established in 1900; that after him possession passed to Leatutufu Niu Suaese and that after him possession passed to the witness. The witness stated that he received his matai title in 1934 and that that was the time he got possession. He further testified that some of the large trees on the land, when it was bush except for a few coconuts, were cut down by his father. He also stated that he was the first holder of the title Leatutufu, which conflicts with his testimony that it was held by Niu Lelea and Niu Suaese. However, he did indicate that these two men were members of the Leatutufu family. Leatutufu's testimony as to the possession of the land by Niu Lelea, then by Niu Suaese and finally by Leatutufu himself was corroborated by Lealao, 53 years of age. Lealao also testified that Niu Lelea and Niu Suaese were members of the Leatutufu family; and that Niu is a lesser title in that family.

Iuli testified that Niu Lelea cultivated the land and planted plantations on it before Leatutufu got the title. In answer to the question whether Niu is a matai or a young man's name he testified "that is the matai of the Leatutufu family." His testimony also was to the effect that the land had been in possession of his family from before the establishment of the Government until the Marines moved in during the war. Iuli testified that he showed the land to the War Claims Commission in order to get the money for the war damage to it, and that the money for such damage was paid to him. Leatutufu testified that he showed the land to

the Commission for the same purpose and that he got the money for the damage.

Leatupo, a witness for Iuli, testified that the Iuli family had plantations on the land prior to the present Leatutufu (the objector) putting in his plantation on it.

We think that the evidence preponderates in favor of Leatutufu. We believe, especially in view of Iuli's testimony that Niu Lelea had plantations on the land prior to the objector Leatutufu and that Niu was a matai in the Leatutufu family, that the property was in the possession of the Leatutufu family from the time of the establishment of the Government in 1900 up to the time the Marines took possession during the war, and that it has been in the possession of Leatutufu since the Marines left at the close of the war.

Our view of the evidence leads us to the conclusion that the land offered for registration is the property of the objector Leatutufu.

Since such possession has been active, open, exclusive, notorious, visible, continuous, hostile and under a claim of title, it follows that if the Iuli family had any prior claim to it, such claim has long since been outlawed by the 20 year statute of limitations. 2 Corpus Juris 251; II Tiffany on Real Property (2nd Ed.) Sections 501–504; *Maxwell Land Grant Co. v. Dawson*, 151 U.S. 586, 607; *Vaimaona v. Mulitauaopele S.*, No. 57-1948 (Am. Samoa).

While it is not necessary to a decision in this case, it may properly be said that if the testimony for the proponent Iuli and objector Leatufufu [sic] were equally balanced, which it is not, the presumption of ownership in the objector arising from the fact of his possession of the property would prevail. *Kauffman v. Logan*, 187 Iowa 670, 174 N.W. 366. It has been said that a "presumption of law cannot be said to be rebutted, where the evidence of equally credible witnesses for and against the presumption is

equally balanced ... where the evidence for and against the presumption are equal the presumption will prevail." *Rowe v. Rowe*, 144 Va. 816, 130 S.E. 771, 772. The view that when the evidence is equally balanced, the presumption will prevail is approved in *Worth v. Worth*, 48 Wyoming 441, 49 P.2d 649, 103 A.L.R. 107, 114.

In view of the law and the evidence it is the conclusion of the court that the surveyed tract offered for registration by Iuli is the communal land of Leatutufu of Tula in his capacity as a matai.

Section 905 of the Code provides that "when land is offered for registration, the offer shall be accompanied by a survey of the land proposed to be registered. The point of departure in such survey shall be either (a) tied in with an established naval co-ordinate or (b) be a concrete monument procured from or poured in place by the Public Works Department for that purpose and set at least 3 feet in the ground at a corner of the land." When the Judges visited the property on the day preceding the hearing, and asked to be shown the iron pin designated on the filed plat as the point of beginning, the parties were unable to locate it. Nor was there any concrete monument set at a corner.

Upon the survey being tied in with a naval co-ordinate and properly indicated by the surveyor on the filed plat or upon satisfactory evidence being filed with the court of the installation of a concrete monument complying with the requirements of Section 905, the court will order that land Matatula be registered as the communal land of the Leatutufu in his capacity as matai of that family, said land being designated by Leatutufu as Fagasa.

Inasmuch as the expense of surveying the land was borne by Iuli and will inure to the benefit of Leatutufu, it is equitable that Leatutufu bear the costs in this court. Accordingly, costs in the sum of $25.00 are hereby assessed against Leatutufu, the same to be paid within 30 days.

Evidence of satisfactory nature to the effect that a concrete monument has been set at a corner of the property involved (it appears from a certificate of the Pulenu'u of Tula filed with the court that two such cement posts have been placed at two corners of the highway) it is ordered that the property be now registered as provided in the third full paragraph on page 332.

Apr. 7, 1948                    /s/ Arthur A. Morrow, C. J.