In the Matter of the ESTATE OF CHARLES BAKER, deceased.
On Hearing of Objections to Final Report of Executors.
I. W. BAKER, Beneficiary and Objector, Appellant.

Estates of decedents: HOMESTEAD: OCCUPANCY BY WIDOW: PAY-
1   MENT OF RENT. Upon the death of the husband the wife may con-
tinue to occupy the homestead until it is otherwise disposed of
by law, and she is not required to pay rent during the time thus
occupied and prior to an election to take a distributive share in the
estate.

Evidence: TRANSACTIONS WITH A DECEDENT. A widow claiming that
2   her husband assigned a lease to her prior to his death covering
part of his property is competent to testify to the genuineness of
his signature and to her possession of the instrument before his
death. Evidence held sufficient to show an assignment of the lease
in question.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL,
Judge.

WEDNESDAY, MARCH 11, 1914.

THE controversy involved in this case arises upon excep-
tions to the final report of executors. There was trial to the
court sitting in probate. After hearing, the exceptions were
overruled, and the report approved. The objector, I. W.
Baker, has appealed.—*Affirmed.*

*Guy S. Calkins,* for appellant.

*Henry G. Walker,* for appellees, executors.

EVANS, J.—The decedent, Charles Baker, died testate
on July 1, 1910. This will was admitted to probate on Sep-

tember 12, 1910. The decedent left surviving him his widow, Minnie H., and four sons by a former marriage. In pursuance of their nomination in the will, the widow and the son, R. N. Baker, were appointed executors. Twenty-two months later the executors filed their final report. The objections to this report were made by one of the sons, I. W. Baker, appellant herein. The report of the executors was objected to in two respects: (1) Because the executors had rendered no account for the rent of the homestead during the intervening period, twenty-two months; (2) because the executors failed to account for twelve months rent on certain other real property.

It is undisputed that the decedent left a homestead and two other pieces of realty located in Iowa City, and that each of such pieces of realty, including the homestead, had a rental value of $30 per month. The two pieces of realty other than the homestead were actually rented at such a rate. By the terms of the will the widow became entitled to the household goods and library, and one-third of the estate, which was to include the homestead. The rest of the estate was to be "divided into four equal sums," etc., for the purpose of division among the sons. The widow did not make her election to take under the will until the filing of the report of the executors, when such election was made in due form. For the intervening twenty-two months she had occupied the homestead.

By the first objection above referred to, it is sought to charge her with rent for the use of such homestead. It is argued that, inasmuch as she took a third of the estate, she should be charged with the rental value of the homestead while it was occupied by her. The trouble with this argument is that it wholly ignores the statute on the subject.

1. ESTATES OF DE-
CEDENTS: home-
stead: occu-
pancy by wid-
ow: payment
of rent.

Section 2985 provides that "upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according

to law, but the setting off of the distributive share of the husband or wife in the real estate of the deceased shall be such a disposal of the homestead as is herein contemplated.'' The occupancy of the homestead by the widow in this case was in strict accord with this statute. It was in accord also with our previous decisions. *Burdick v. Kent,* 52 Iowa, 583; *Mahaffy v. Mahaffy,* 63 Iowa, 55; *Fehd v. City of Oskaloosa,* 139 Iowa, 621.

In the *Mahaffy* case, *supra,* it was said: ''The right of the wife to continue in possession and occupancy of the homestead, after the death of the husband, is not a right or interest in his estate which she takes by inheritance, but is entirely distinct from the interests which she takes by virtue of that right. It is a mere personal right to occupy and possess the premises, but is unaccompanied by any title or property interest therein. It does not accrue with the death of the husband, nor is it enlarged or otherwise affected by that event. She had the right to the same extent during his life and the statute   .   .   .   simply continues it after his death.'' It is true she could have been required to elect at an earlier date, but such a requirement was not made by any of the parties in interest. We hold therefore that the widow is not chargeable with rent for the occupancy of the homestead prior to her election.

II. As to the other items specified in the objections, the contention for the executors was and is that shortly before he died, the decedent caused a written lease for one year to be signed by himself as lessor and one Rigler as lessee of one of the pieces of realty, at $30 per month, and that he thereupon assigned to his wife, in writing, said lease and the rent to accrue, amounting to $360. For such reason, no account was made in the executors' report for such rent. In support of this contention, the widow produced the lease, with a purported assignment duly executed on the back thereof by the decedent. She testified, over the objections of the objector, that she was ac-

2. EVIDENCE: transactions with a decedent.

quainted with her husband's signature, and that the signature there appearing was her husband's signature. She further testified that she had been in possession of such lease and such assignment from a time prior to the death of the decedent. Some other matters were also testified to by her in the same connection, which were ruled out by the trial court as being forbidden by the provisions of section 4604 of the Code. It is now urged by appellant that the evidence permitted to stand was also in violation of such section, and that, in any event, it was insufficient to sustain a finding of the signing or the delivery of the assignment in question by the decedent to his wife. We think it was clearly competent for the widow to testify to her opinion of the genuineness of the signature of her deceased husband upon a showing of her previous familiarity therewith. We think it was equally competent for her to testify to her own possession of the instrument before the death of her husband. Whether these two circumstances were sufficient to sustain a finding by inference that the same was delivered to her by her husband, we have no need to decide, because of the cross-examination of the witness, which was as follows: "Q. Whose handwriting is this in, Mrs. Baker? A. That is mine. Q. Whose handwriting is this on the back of this Exhibit A—of executor's Exhibit A? A. That is mine. Q. You say this was in the morning that he delivered this to you? A. Yes, sir; in the forenoon. Q. On the Tuesday preceding his death on Friday? A. Yes, sir. Q. Handed it to you with his own hand? A. Yes, sir. Q. Did he sign this in your presence? A. He did. Q. He was in bed at that time? A. He was. Q. Weak? He was able to write his name sitting up? A. Well, he did it. I don't know how else to tell you. Q. How long had he been in bed directly prior to that night? A. Over night. He went to bed about 10 o'clock the night before. Q. Did you hold or guide the pen as he signed? A. I did not."

This examination went beyond the examination in chief, and fully supplied all that was lacking therein. The evi-

dence was wholly undisputed. The trial court properly sustained the report of the executors at this point also, and its order is therefore—*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur.