MARY A. TUCKER, Appellee, v. W. A. ANDERSON, Admr.,
Appellant.

**WITNESSES:** Competency—Transactions and Communications with
1 **Deceased.** The daughter of a claimant against an estate, having
*no interest in her mother's claim, is a competent witness as to
transactions and communications had by such witness with the de-
ceased a fortiori* as to conversations between the mother and
deceased in which the daughter did not participate. (Sec. 4604,
Code, 1897.)

**HUSBAND AND WIFE:** Earnings of Wife—Action to Recover—Real
2 **Party in Interest.** An action to recover wages for the personal
labor of the wife, performed with the husband's consent, is prop-
erly brought by the wife in her own name. (Secs. 3162, 3477,
Code, 1897.)

**WITNESSES:** Competency—Transaction with Deceased—Denial of
3 **Signature.** A party to an action on a claim against the estate of
a deceased is a competent witness to testify that the signature to
a receipt in full to deceased *is not his genuine signature.* (Sec.
4604, Code, 1897.)

PRINCIPLE APPLIED: Action on claim against the estate of deceased. A receipt was introduced, acknowledging payment in full by deceased, with claimant's name attached. No witness claimed to have seen claimant sign it. There was evidence, expert and by comparison, of the genuineness of the said signature, but beyond this there was no evidence that claimant ever saw the paper. The receipt was turned over to the administrator by a former attorney for deceased. When this attorney first saw the receipt does not appear. He did not notice the receipt among the papers prior to the death of deceased. The attorney's name was signed as a witness to claimant's alleged signature. He had faint remembrance of it. There was no evidence that deceased knew anything about the paper. *"All the evidence offered to. support the receipt was the evidence of facts which were not shown to be within the personal knowledge of deceased."* Claimant was permitted to deny the genuineness of the signature to the receipt. *Held,* proper, no personal transaction with deceased having been shown.

*Appeal from Monroe District Court.*—HON. FRANCIS M. HUNTER, Judge.

WEDNESDAY, OCTOBER 20, 1915.

ACTION against the administrator of a deceased person to recover for services rendered. Judgment in the court below for the claimant. Administrator appeals.—*Affirmed.*

*John R. Price,* for appellant.

*John T. Clarkson,* for appellee.

GAYNOR, J.—Plaintiff claims compensation for services rendered Thomas A. Bowen, now deceased. The defendant, Anderson, is the administrator of his estate. The claim is for board, lodging, nursing and care from June 20, 1908, to about August 20, 1911, at the rate of $10 per week, less $553, paid thereon by the deceased during his lifetime. Plaintiff states her claim as follows:

That, on or about June 20, 1908, she entered into an oral contract with Thomas Bowen by which she agreed to take him into her home, furnish him with reasonable care, com-

forts, nursing, attention and food for and during his natural life; that the decedent, in consideration thereof, agreed to execute a will in her favor by which, upon his death, she would receive and become vested with all the property of every kind and character which he owned or possessed at the time of his death; that, in pursuance of such contract, Bowen entered the plaintiff's home and resided with her therein from June 20, 1908, until about August 20, 1911; that thereafter, under and by virtue of said contract, she furnished decedent with a home, gave him care and attention, furnished him all his food, nursed and cared for him in sickness and provided him with all the necessaries and comforts of life within the limits of her means, up to about August 20, 1911; that, on the 20th of August, 1911, without any grounds therefor, but for reasons sufficiently satisfactory to decedent, he left plaintiff's home; that, upon his leaving, she demanded compensation for the services rendered; that he thereupon stated and agreed that he would pay plaintiff well and fully therefor, and would pay her a reasonable sum per week for all the services rendered and food and lodging furnished during the time that he remained at her home, from June 20, 1908, to on or about August 20, 1911; that, when decedent left plaintiff's home, he paid her $553 to apply in part payment for the services, nursing, food and lodging furnished; that the services were actually worth $10 a week, and no part has been paid except the $553.

Defendant, in his answer, denies each and every allegation of plaintiff's claim, except that he admits that Thomas Bowen for a time resided with the plaintiff; denies that he resided the length of time claimed; denies that the services rendered were of the value claimed. For an affirmative defense, he says that the $553 paid by decedent to plaintiff was in full payment of all claims and demands of whatever kind or nature plaintiff or her husband had against Thomas Bowen for the services rendered, up to and including the

31st of July, 1911, and was so accepted by the plaintiff at the time.

Upon these issues, the cause was tried to a jury and a verdict rendered for the plaintiff for the full amount of her claim, less the $553 admitted to have been paid by decedent. The claim was therefore allowed by the court as the claim against the estate for the amount found by the jury. From this, the defendant appeals, and alleges several errors upon which he predicates a right to have the cause reversed.

It is not contended by the defendant that the evidence, if properly admitted, did not justify the verdict returned by the jury. However that may be, we have examined the record and find evidence sufficient to sustain the verdict. We are not concerned, therefore, with the sufficiency of the evidence to justify the verdict. That question was submitted to the jury and determined by it on evidence which, if competent, sufficiently supports the jury's finding. We turn, therefore, to the record for the purpose of ascertaining whether or not the case was fairly submitted to the jury upon evidence proper to be considered by them in reaching the verdict.

It is contended by defendant in this appeal that the court erred in the admission of evidence, and that these errors were prejudicial to the defendant. Appellant has assigned several errors, some of which would not have been assigned except for a misapprehension of what the record shows.

Before proceeding to the real question in this case, we will say that the fourth, seventh and eighth errors are all predicated upon the supposition that the court rejected evidence offered by the defendant, known in the record as Exhibits 1 and 2. These exhibits consist of written instruments to which were attached the signature of the plaintiff. These were offered for the purpose of comparison with the signature in dispute. We find that the appellant is in error in supposing that the court rejected these. The record shows that they were offered and admitted and, we must presume,

submitted to the jury for comparison with the disputed signature.

I. The first matter complained of to which we turn our attention is the action of the court in permitting the witnesses Blanche Davis and Sadie Scott to testify in behalf of plaintiff. The theory of the defendant is that these witnesses were not competent to testify, not that the evidence was incompetent. This objection is based upon the provisions of Sec. 4604 of the Code, which reads as follows:

1. WITNESSES: competency: transactions and communications with deceased.

"No party to any action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, and no husband or wife of any said party or person, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, . . . against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person."

It appears that these witnesses, Sadie Scott and Blanche Davis, are daughters of Mrs. Tucker, the plaintiff. The matter drawn out and of which complaint is made did not relate to any personal transaction between these witnesses and the deceased. The testimony of these two witnesses is substantially the same, and is to the effect that the deceased lived with their mother three or four years; that the mother took care of him; that he had a running sore on his leg, and had to be lifted around; that they saw the mother doing this, helping him in his chair and at the table and to different places, and waiting on him; that the deceased was not able to walk much on account of this running sore; that they saw the plaintiff wash this sore for the deceased; that they saw

her wash and bathe him. They then testified to conversations which they overheard between their mother and the deceased. They testified as to what they heard the deceased say, if anything, as to compensating plaintiff for services to be rendered, at the time he first came. Upon this point, the following questions were put to these witnesses and answered:

Q. "When Uncle Tommy first came to your mother's home, what did Uncle Tommy say as to how long he was to stay there, if anything?" To which the witness, over the objection of the defendant, answered, "Until his death." Q. "What did he say as to what your mother was to get, if anything, and his staying there and the services to be rendered?" A. "He said she was to get everything at his death."

Subsequently they were interrogated as to conversations had between the mother and the deceased at the time he left. These questions were asked and answered:

Q. "What, if anything, did your mother say to him as to whether she did or did not want him to go?" A. "She said she could not afford to let him go unless some kind of an arrangement was made or something was paid for all this care for these three years. He said he was going down to George Tucker's place to live. He said he thought he would get married. He said he would be back in a week or two and she would be well paid for her trouble."

This testimony was all objected to on the ground that the witnesses were incompetent under the provisions of the section hereinbefore set out. A careful reading of the section is the best answer to this contention. These witnesses did not come within the inhibition of the statute. We take it, however, that these conversations detailed took place between the mother and the deceased; that these witnesses overheard the conversations but took no part in the conversations. They

would not, therefore, constitute personal transactions or communications between the witnesses and the deceased person. Thus, where a wife is, by the terms of the statute, prohibited from testifying to personal transactions and communications between herself and the deceased, she is not incompetent to testify to conversations overheard by her, had between her husband and the deceased, where she was a mere listener. *Johnson v. Johnson,* 52 Iowa 586; *Lines v. Lines,* 54 Iowa 600; *Erusha v. Tomash,* 98 Iowa 510. However, it is not necessary to cite authority on this proposition, for the reason that these witnesses do not come within the inhibition of the statute; and even though the conversations were had between the witnesses and the deceased, they would be competent to give them when called for in behalf of the mother. These witnesses were not parties to the suit, were not interested in the event thereof, and clearly did not come within any of the other inhibitions.

II. It is next contended by appellant that the plaintiff was not entitled to maintain her action—was not the real party in interest,—for the reason that, at the time she claims to have rendered the services, she was a married woman living with her husband, and that she did not become entitled to compensation for her services because her services belonged to the husband, and he did not assent to her action in serving the deceased. There is evidence, however, in this record that the husband, who was dead at the time this trial was had, did assent, if such assent is necessary under our statute. This evidence is found in the testimony of Mrs. Blanche Davis, plaintiff's daughter, and appears in the record as follows:

2. HUSBAND AND WIFE: earnings of wife: action to recover: real party in interest.

"Uncle Tommy sent for mamma to come out to get him. Mamma said she did not know whether she wanted to go or not, and papa said for her to do just as she chose about it.

*Everything she got would be hers,* so she went and got him and took care of him'' (referring to Mr. Bowen).

Sec. 3162 of the Code of 1897 provides:

"A wife may receive the wages for her personal labor, and maintain an action therefor in her own name, and hold the same in her own right, and may prosecute and defend all actions for the preservation and protection of her rights and property, as if unmarried."

As bearing upon this question, see *Carse v. Reticker,* 95 Iowa, at page 28, in which this court said, ''That it is the duty of a wife, as helpmeet, to attend, without compensation, to all household duties, and labor faithfully to advance her husband's interests is true, yet it certainly is not her duty, unless she desires to incur it, to undertake the boarding of a large number of persons who may, for the time being, come under the charge of her husband.'' In this case it appeared that the husband had expressly and completely abandoned all his claim to the money earned in that way. See, also, *Lindsey v. Lindsey,* 116 Iowa 480, in which this subject is quite fully discussed.

We find no reversible error on this point. Plaintiff's husband died on January 8, 1911. We think the plaintiff was entitled to maintain the action.

III. We come now to a consideration of the last complaint, and the only one about which there can be any controversy.

It was claimed by the defendant in his answer that the $553, which the plaintiff admitted she received from the deceased during his lifetime, was in full payment of all the services rendered by her to the deceased while he resided with her.

**3. WITNESSES: competency: transaction with deceased: denial of signature.**

To establish this contention, defendant offered in evidence a paper known in the record as Exhibit 6, which reads as follows:

"Albia, Iowa, July 31, 1911.

"Fred Townsend, Lawyer.

　"Albia, Iowa.

"$553.00.

　"Received of Thomas Bowen the sum of Five Hundred Fifty-Three Dollars in full of all claims and demands of whatever kind or nature that we have against him to this date.

　"Witness: Fred Townsend.

　　　　　　　　　　"(Signed)　S. E. Tucker.

　　　　　　　　　　　　　"Mrs. Mary A. Tucker."

This paper was admitted in evidence upon the following showing: Fred Townsend, called as a witness on the part of the defendant, said:

"Am 51 years old; have been engaged in the practice of law about 20 years; am a notary public. Have viewed handwriting to some extent; had some experience in examining and comparing handwriting. I live in Albia. Was acquainted with Thomas Bowen the last four or five years. As an attorney, I did business for him. I had in my possession papers belonging to him at the time of his death. I knew plaintiff's husband during his lifetime. When I took possession of Mr. Bowen's papers before his death, I do not remember seeing Exhibit 6." Q. "Did you see this instrument before?" A. "I must have." Q. "Do you know who drew that instrument?" A. "I feel sure I wrote the instrument, my name is signed to it. That is my signature, and it is on my letter head. It is my best judgment that the signature S. E. Tucker is the signature of S. E. Tucker. I have seen his signature a number of times." Q. "Will ask you to examine Exhibit 6 and ask you whether or not the signature, 'Mary A. Tucker' appearing there is the genuine signature of Mary A. Tucker?" A. "In my judgment, it is her signature. In my judgment the signature on Exhibit 6 is her genuine signature."

On cross-examination, he says:

"I give it as my best recollection that it is the signature of Mary A. Tucker, because my name appears as a witness to Exhibit 6, and by comparison with a signature I know to be genuine (referring to Exhibit 7, which was admitted to be the genuine signature of the plaintiff and was before the witness). No, I am not an expert on handwriting. I have given some time to comparison of handwriting. My name appears in my own handwriting on Exhibit 6. I do not remember the preparation of Exhibit 6. I remember these parties' coming to my office about that time. What recollection I have of the preparation of Exhibit 6 is very slight. I have a faint recollection of it, but it is very faint."

Thereupon, Exhibit 6 was admitted in evidence.

Thereupon, the plaintiff was called to the stand and testified as follows:

Q. "Mrs. Tucker, I show you Exhibit 6 purporting to be a receipt and ask you if you ever had any such paper presented to you to sign?" A. "I never did." Q. "On that paper, Mrs. Tucker, appears what purports to be the name written, 'Mrs. Mary A. Tucker'. I wish you would examine that paper carefully (being Exhibit 6) and state whether or not you did or did not write that name 'Mary A. Tucker'." A. "I never did write that name on that paper, and I never did have that paper presented to me." Q. "Did you not, at any time, sign your name to any paper as a receipt in full?" A. "I never did." Q. "Was any such paper as Exhibit 6 presented to you for you to sign by Mr. Townsend?" A. "No, sir." Q. "Did Mr. Townsend in your presence sign any paper as a witness of it that you had signed showing payment in full?" A. "No, sir." Q. "Did you authorize him to sign any such paper for you?" A. "No, sir." Q. "Did you authorize anyone to sign a receipt for you or in your behalf showing payment in full?" A. "No, sir."

These questions the defendant objected to, on the ground that the witness was incompetent under Sec. 4604, and these objections were overruled, and of this defendant complains.

This is all of the testimony offered touching this receipt. The defendant seeks to bind the plaintiff by it on the simple showing that the signature on the paper is her genuine signature. There is no evidence from any witness who claims to have seen her attaching her name to this paper. The only testimony is the testimony of Townsend, who says that he has but a slight recollection of Exhibit 6, but feels sure that he wrote the instrument because he finds his name attached to it. He gives it as his best judgment that the signature, "Mary A. Tucker", is the genuine signature of the plaintiff. He says he thinks this because of comparisons made by him with admitted signatures. There were three signatures before the jury which were admitted to be in the handwriting of the plaintiff. Exhibit 6 was in dispute. He says he does not remember the preparation of Exhibit 6. The recollection he has of the preparation is very faint. His testimony that it is her signature is based on comparisons, and upon the thought that it must be her signature or his name would not appear there as a witness. There was no evidence that the paper was ever presented to the plaintiff, no evidence that she ever saw the instrument, no evidence that anything was paid to her at the time it was claimed the exhibit was signed, no evidence that the deceased was present, no evidence that it was ever delivered to the deceased, or that he ever had it in his possession. The only witness on this point for the defendant says: "When I took possession of Mr. Bowen's papers before his death, I do not remember seeing Exhibit 6 among the papers."

Upon this state of the record, the probative force of this exhibit depends entirely upon whether or not it was shown that the signature attached to the instrument was the genuine signature of Mary A. Tucker. If it was not, she was not bound by it. There is no evidence that she authorized anyone

else to sign her name to any instrument of that character or to the instrument in question. Whether this instrument should be accepted by the jury as evidence of a full settlement and discharge on the part of the plaintiff depends altogether, so far as this record shows, upon proof of the genuineness of that signature. All other matters called for by the examination related to and could only have probative force upon this one question, Is the signature in controversy the genuine signature of Mary A. Tucker? Without proof that the signature was genuine, the instrument had no probative force as against the plaintiff's claim. It was on proof of the genuineness of this signature that the defendant predicated his defense that a settlement and discharge had been made in full. She was called and permitted to deny the genuineness of this signature. Did this testimony have relationship to, and was it a personal communication or transaction with the deceased? If she never signed the paper (there being no other evidence to connect her with it), then there was no transaction at all, even touching the paper, by which she could be bound. As said before, there were three signatures of the plaintiff before the jury for comparison which were admitted by her to be her genuine signature. The jury had the instrument in question with these three genuine signatures for comparison. They found that the plaintiff did not sign this instrument. This, however, is not in itself a full answer to defendant's contention. If she was incompetent to give it, the giving of it may have turned the scales of justice in her favor; so the question is, and must be determined, Was she competent to give this testimony under the circumstances detailed in this case?

Upon this question, the courts are not agreed. Some of the disagreement possibly rests upon the peculiar wording of the several statutes. However, the courts have disagreed upon this proposition even with statutes similar to our own. Our statute provides: "No party to an action (and plaintiff was a party to this action) . . . shall be examined as a

witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased.''

To make the inhibition complete, it must appear that the testimony given by her related to a personal transaction between her and the deceased, or to a personal communication made by one to the other. Our court has never passed directly upon this point, and, so far as the holdings of this court are concerned, we are without direct authority upon a question of this kind. The trend of authority in this state affirms the right of the plaintiff to so testify. See *In re Baker*, 164 Iowa 305. This case is not directly in point upon the matter here under consideration, but has some persuasive force in its argument in favor of plaintiff's contention. In this case, Charles Baker was dead. He left a widow surviving him, and four sons by a former marriage. Decedent left a homestead and two pieces of real property. A controversy arose between one of the sons and the widow. An effort was made to charge her (the widow) with rent for the use of certain of this real property. The contention of the executor was that the deceased had leased this property before his death and that this lease was assigned to the widow, and for that reason no accounting was made of this rent. In support of this contention, the widow produced the lease with the purported assignment duly executed on the back thereof by the decedent. She testified, over objection, that she was acquainted with her husband's signature; that the signature there appearing was her husband's signature. She further testified that she had been in possession of such lease and such assignment from a time prior to the death of the decedent. It was urged that she was forbidden to give this testimony by Sec. 4604. The court said:

''We think it was clearly competent for the widow to testify to her opinion of the genuineness of the signature of her deceased husband upon a showing of her previous

VOL. 172 IA.—19

familiarity therewith. We think it was equally competent for her to testify to her own possession of the instrument before the death of her husband.''

In *Britt v. Hall*, 116 Iowa 564, the plaintiff claimed to be the illegitimate daughter of Reuben S. Bennett, deceased, and asked that she be decreed to be the sole surviving heir of the deceased. It became necessary, therefore, for her to bring herself within the provisions of Sec. 3385 of the Code, requiring that she be recognized in writing during the life of her putative father. To establish this, she offered certain letters claimed to have been written by her putative father to her, in which she claimed he recognized her as his daughter. She was called and gave testimony tending to establish the fact that she received through the mail the letters offered; that they were in the handwriting of the putative father. The complaint was made of this testimony that she was not competent to so testify under the provisions of Sec. 4604; but the court said: ''Neither of these facts involved any transaction or communication with the deceased, and the testimony was competent.''

As bearing upon the question in controversy, see *Sankey v. Cook*, 82 Iowa 125, 128.

*In re Brown Estate*, 92 Iowa 379, is relied upon by appellant. It appears that there was a controversy between the plaintiff and the administrator of the deceased person over legal services. It was claimed that the plaintiff was paid by checks. Defendant offered a check in evidence, after *establishing* the fact that it was in the decedent's handwriting. Objections were urged and overruled, and the check admitted in evidence. The check contained on its back an endorsement by the plaintiff. It appears that the plaintiff received the check in question; that it was signed by the deceased and endorsed on the back by Cole, the plaintiff; that Cole received the money. The check was in the nature of a receipt for so

much money. Defendant, administrator, offered this check
in evidence upon this showing. Plaintiff was then called,
and was asked these questions: "You may state, Mr. Cole,
for what the check introduced in evidence was given to you."
"Examine the face of the check, Mr. Cole, and state what, if
any, words in writing are now on the check that were not
there when the check was *delivered to you,* and *when you
endorsed it.*" "You may state, Mr. Cole, whether all the
sums of money that *you received from Mr. Brown,* after the
beginning of the foreclosures which have been designated in
this record as Nos. 1908 to 1928 inclusive, and prior to the
death of Mr. Brown, were received by you in the form of
checks." These questions were all objected to and objections
sustained.

It was the opinion of the majority of the court in that
case that the objection was well taken. There it was apparent
that a personal transaction had taken place between the
deceased and the plaintiff. It was conceded that the check
was delivered by the deceased to the plaintiff; that the plain-
tiff received it from the deceased; that he endorsed it and
obtained the money on it. It is claimed by the plaintiff that
there were words written in the check after its execution and
delivery as follows: "Balance on settlement to April 1, 1890.
This embraces attorney's fees in Truesdale Cases and other
foreclosures." The plaintiff sought to show by his own testi-
mony that these words were not on the check at the time he
received it. These words were there or they were not there.
If they were there, it tended to show full payment to the
plaintiff by the decedent in the form of this check received
and cashed by the plaintiff. In that case, it was held by a
divided court that the plaintiff was incompetent, and the
court said:

"Does this call for a personal transaction? It is impos-
sible to define what, under all circumstances, will constitute
a personal transaction. The question is to be determined

largely by the facts peculiar to each case. . . . The majority of the court is of the opinion that this was a personal transaction, and hence properly excluded. They think that the transaction embraced not only the execution and delivery of the check, but also the endorsement of it by Cole; that it stands as an instrument to which both Cole and decedent were parties; and that the question does not call for evidence of an independent transaction. When the check was offered in evidence, the presumption was that it was in the same condition as when *received and endorsed by Cole,* and to permit Cole to testify as to what was in fact written on the paper when he thus received it and endorsed it would be admitting evidence as to what the transaction between the parties in fact was, and hence in contravention of the statute. The writer of this opinion and Mr. Justice Given cannot accede to the correctness of this doctrine (the opinion was written by Justice Kinne), and hold that the question called for an independent fact, to wit, the knowledge of Cole as to the condition of the paper at a certain time; that that knowledge was obtainable by observation alone, and without regard to any transaction or dealing between the parties."

The holding of the majority in this case seems to be bottomed on the thought that, because it was admitted that the check was delivered by deceased to the plaintiff, that he accepted it, endorsed it and cashed it, it became a completed transaction, personal in its nature with the deceased, and therefore within the inhibition.

It is not shown by the evidence in the case at bar that this receipt was given by the plaintiff to the deceased; it is not shown that the deceased ever had it in his possession; it is not shown to be in the handwriting of the deceased; it is not shown that the deceased was present at the time it was executed, or that he had any knowledge of its execution. It was not among his papers when they were taken possession of by Townsend, who was the only witness who seems to know

anything about this receipt, and who transacted deceased's legal business.

The line of demarcation between what is a personal transaction and what is not a personal transaction is not always easy of discernment. The rule, while statutory, has its foundation in reason and experience, and is intended as a rule of fairness in the administration of public justice. The reason upon which this statute seems to be based is that there shall be no admission unless there be mutuality; that when the lips of one party to a transaction are sealed by death, those of the other party to the transaction must in like manner be sealed by law. Thus it must appear, to come within the inhibition of the statute, that the transaction concerning which the testimony is offered, to be personal, must have taken place between the deceased and the witness, of which each must, in the nature of things, have had knowledge and be able to testify. Where the lips of one are closed, the lips of the other party to that transaction must also be closed, and this is the rule of fairness.

Townsend testified for defendant: "I took possession of Mr. Bowen's papers before his death. I don't remember seeing Exhibit 6, the receipt in question."

The administrator testified: "The papers belonging to Mr. Bowen were turned over to me about a week after I was appointed. They were turned over by Fred Townsend. They were in a tin box."

This is all the evidence tending to show, if it does tend to so show, that Bowen ever had possession of this receipt, or that he ever saw it. Townsend claims to have taken the receipt. He claims to have witnessed the signature to the receipt; he claims that the receipt was upon his own letter head; he claims that he did not find it among the deceased's papers at the time he took possession before his death, and stops there. The administrator then is called and says that he received this receipt from Fred Townsend. Upon this showing, it does not appear that the decedent had any per-

sonal transaction with the plaintiff, or that he ever knew that the receipt in question was ever given or received. If he were living, he could not testify to anything touching this receipt. The evidence was introduced by the only person who claims to have known anything about the giving of this receipt. Signatures, admitted to be the genuine signatures of the plaintiff, were introduced in evidence. All the evidence offered to support the receipt was the evidence of facts which were not shown to be within the personal knowledge of the deceased. It was not shown that he had any personal trans-action or communication with the plaintiff, or the plaintiff with him, out of which this receipt grew. The rule of fair-ness, therefore, did not deny to the plaintiff a right to be heard in her own behalf, and to be heard to say that she did not sign the receipt in question, and it cannot be said under this record that in so doing she violated any of the inhibitions of the statute. It cannot be said that, by so doing, she detailed a personal transaction or communication between herself and the deceased, or attempted to deny a personal transaction between herself and the deceased, concerning which testimony was offered by the administrator.

As supporting our conclusion, see *Ferebee v. Pritchard,* (N. C.) 16 S. E. 903. In this case, a woman, in contempla-tion of marriage, voluntarily and without any consideration conveyed away her property. Subsequently, the marriage was consummated, and thereafter the wife died. The husband brought an action to set aside the conveyance as in fraud of his marital rights. It became necessary, therefore, for him to show that the contract to marry was in existence at the time of the conveyance. To prove this, he offered certain letters claimed to have been written by his wife before mar-riage. He was called as a witness to prove that the signature to a letter in which she promised to marry him was in her handwriting. Objection was urged to his testimony on the ground of incompetency. The court said: ''It was not a

transaction with the deceased person within the meaning of the Code.''

The Code was substantially the same as our own as to this question.

See also *Murphy v. Hindman* (Kansas), 48 Pac. 850; *Saratoga County Bank v. Leach*, 37 Hun. 336.

This last case was an action on a promissory note. The defence was that the signature to the note was a forgery. Upon the trial, defendant was sworn in his own behalf and was asked this question: ''Is the signature to the paper (the note in suit) your signature?'' Objection was interposed that it called for a personal transaction between the witness and the person deceased, and the witness was a party to the suit. The objection was sustained by the lower court and reversed on appeal. The Supreme Court said:

''The plaintiff insists that because he has given prima-facie evidence of the genuineness of the signature, the defendant cannot testify in his own behalf to the contrary. Suppose then that the defendant, by other evidence, had overwhelmed this prima-facie evidence, could the plaintiff still insist that the testimony, which the defendant offered to give by himself as a witness, was 'concerning a personal transaction?' According to the supposition, the 'personal transaction' would have been practically disproved by competent evidence. It will be found very generally, if not always, that the point, whether or not the testimony *is* concerning a personal transaction appears by the testimony itself which is offered, and is not dependent upon some other matter which is in dispute.''

The holding in that case is that the mere making of the signature is not a personal transaction; that the personal transaction consists in the delivery and receipt. Upon this point, the defendant was not questioned, and therefore was not brought within the inhibition. See also *Simmons v. Havens* (N. Y.), 5 N. E. 73.

In *Pillard v. Dunn* (Mich.), 66 N. W. 45, an adminis-

trator brought an action against the defendant upon a promissory note, and introduced testimony tending to show that the same was signed by the defendant, in the presence of the intestate, at a certain time and place. The defendant offered to show that he did not sign the note; that, at the time it was claimed to have been signed, he was in another place. The Supreme Court of Michigan said that his testimony did not come within the inhibition of the statute; that he was competent to testify. The court said in substance:

"It cannot be said that, because a witness testified that the defendant signed the note in the presence of the deceased, that it is true that he did so do. It may or may not have been true. That would be a question for the jury, if it was disputed or denied, and certainly the defendant may be permitted to testify that it was not true",—citing *Ripley v. Seligman,* 88 Mich. 177; *Pinney v. Orth,* 88 N. Y. 447.

The *Orth* case was a suit by the representatives of a deceased person against Orth to recover for alleged services rendered by the deceased to Orth. On the trial, witnesses testified to conversations alleged to have been had between Orth and the deceased. Thereupon, Orth took the stand and proposed to deny the conversation by showing that he was not at the place where the witnesses claimed the conversation was had. Held that it was not testimony as to a personal transaction. See also *Blount v. Blount,* 158 Alabama 242 (17 Am. & Eng. Ann. Cases 392).

We turn now to our own cases relied upon by appellant.

*Ridler v. Ridler,* 93 Iowa 347, 351. This was an action to establish a claim against the estate of George Ridler. The claimant was the daughter of the deceased. The plaintiff was asked to state whether her father, who was then deceased, ever paid her any money for her services during the five years preceding his death. The question was objected to and objection sustained, and this ruling was approved by this court.

This question clearly called for a personal transaction and the objection was rightly sustained. The services claimed for were rendered to the deceased. Whether he paid her for those services was a matter to which he as well as she could testify. It was a personal transaction. His lips were closed by death; hers were rightly closed by law. If she had testified that her father had paid her nothing for her services during that time, she was testifying to a transaction between her father and herself to which he could be called to testify, if living. Therefore, the rule of fairness required that she prove her cause by other testimony than her own.

In *In re Winslow*, 146 Iowa 67, substantially the same question arose, and for this same reason, the testimony of the interested party was rejected.

*Garretson v. Kinkead*, 118 Iowa 383, was an action to recover from the defendant the value of certain wood and potatoes said to have been converted by him, and for money loaned to him by plaintiff's intestate. It appeared that the defendant's father borrowed some money from one Michael. It was contended that the money was procured for the defendant; that he promised to repay his father therefor; that he neglected to do this. The defendant denied this, and also claimed that he had paid debts for his father amounting to much more than the loan. He was called as a witness on his own behalf and was asked whether or not he had ever given his father any written obligation, or was asked to give any written obligation, or any sum of money. This question was objected to as a personal transaction with one deceased. The objection was overruled and, on appeal, this court held that the objection should have been sustained.

This case, like the other, called for a purely personal transaction between the deceased and the witness, who was a party to the suit, and for a transaction to which the deceased might have been called as a witness had he been living.

In *Van Sandt v. Cramer, Administrator*, 60 Iowa 424, plaintiff sought to recover for services rendered the deceased.

Plaintiff proposed to prove by his own testimony that he had never received payment for the services rendered by him. This evidence was rejected, and the action of the lower court in that respect, affirmed. This holding rested upon the thought that it called for such a personal transaction between the deceased and the plaintiff that, if both were alive, each could have testified to the transaction. One of the parties being dead, the other came under the inhibition of the statute.

It makes no difference whether the evidence is affirmative or negative, whether the witness affirms or denies the transaction. If it is a transaction to which both the deceased and the witness were parties,—if it was personal,—one to which each might have testified,—the death of one closes the lips of the other.

The theory of the statute is that the living party to a suit cannot testify about facts, either negative or affirmative, which were equally within the knowledge of the deceased and the witness, against the representatives of the deceased. The very wording of the statute suggests this in its inhibition; for it says, "shall not be examined in regard to any *personal* transaction or communication *between such witness* and a *person* at the commencement of such examination *deceased.*" We know that some courts have distinguished between negative and affirmative testimony, but this court has not followed that doctrine.

We call attention to the note in *Blount v. Blount,* 17 American & English Annotated Cases, at page 398, where the cases holding different views upon this question are collated.

We cannot take time to review all the decisions referred to by the defendant. We recognize the fact that there is a difference of opinion upon this question, but believe the better doctrine is as we have announced.

Under the record in this case, we are satisfied that the court did not err in the admission of this testimony. The cause is, therefore—*Affirmed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur.