IN RE ESTATE OF W. M. CHAMPION.

EDGAR I. RATCLIFF, Appellee, v. MATTIE PRINCE et al.,
Appellants.

ATTORNEY AND CLIENT: Improper Retainer. The fact that an attorney is consulted by a litigating party with a view to employment, and thereby becomes familiar, in a degree, with the litigant's theory of the facts, does not necessarily prevent other members of the attorney's firm, in the event that the attorney is not employed, from accepting a retainer on the other side of the controversy.

**WITNESSES: Competency Under "Dead Man's Statute"—Denial of Transaction.** A devisee under a will is a competent witness to *deny* an alleged transaction between said devisee and the deceased testator, as testified to by a contesting heir.

**WITNESSES: Competency Under "Dead Man's Statute"—Facts Otherwise Shown.** Error without prejudice results from allowing a devisee to testify to a fact which involves a personal transaction with a deceased testator, when such fact is clearly established by the testimony of other competent witnesses.

**WITNESSES: Impeachment—Contradictory Statements Out of Court.** Contradictory statements by a witness out of court are admissible for the purpose of impeachment of his statements in court.

**TRIAL: Instructions—Applicability to Evidence.** No occasion arises in a will contest to instruct that a mental condition of a permanent character, once shown to exist, is presumed to continue, when the record reveals that the party in question had no mental infirmity, and died from heart disease.

**WILLS: Undue Influence—Declarations.** Principle affirmed that declarations by a testator before and after the execution of a will may be of such a nature that they will be admissible on the issue of undue influence.

**TRIAL: Refusal of Requested Instructions—Failure to Except.** Failure to except to the refusal to give requested instructions precludes review of the refusal on appeal.

**TRIAL: Instructions—Urging Verdict.** No ground for reversal is furnished by the fact that the court, some hours after the jury had retired, further instructed the jury "to lay aside pride of opinion and get together, if they could conscientiously do so."

*Appeal from Mahaska District Court.*—Chas. A. Dewey, Judge.

December 21, 1920.

Contest of a will. Verdict for proponents. Contestants appeal.—*Affirmed.*

*C. O. McLain* and *Campbell & Campbell*, for appellants.

*Reynolds & Heitsman* and *H. B. McCoy*, for appellee.

Stevens, J.—W. M. Champion, a resident of Mahaska County, died testate on August 30, 1918. On August 23d pre-

ceding, he executed a will devising a farm of 640 acres, situated in Sargent County, North Dakota, to Bert Galbreath, nephew of his deceased wife, upon condition that he pay $800 to each of several parties named, and $1,000 each to other parties named, the total aggregating $11,400. To this same devisee he gave all of the personal property upon the 640-acre tract, stating that it was owned in partnership between them. To Olena Johnson, who was not related to him, he devised 160 acres of land situated in Mahaska County, subject to a mortgage thereon. He directed his executor to sell a 160-acre tract in Spink County, South Dakota, and apply the proceeds, so far as the same were necessary for that purpose, to the payment of a mortgage and interest and taxes on the 640-acre tract devised to Galbreath. All of his personal property located in Mahaska County he bequeathed to Edgar I. Ratcliff, who was not related to him, whom he also designated as executor of his will. From the moneys remaining in the hands of his executor, he provided that $200 be paid to the Christian Church of New Sharon, and all that remained, if anything, after satisfying the foregoing bequests, he bequeathed in trust for the use and benefit of his sister, Nancy Champion, and at her death to her children, share and share alike.

The will was promptly filed for probate by Edgar I. Ratcliff, the executor named, and, on September 17, 1918, Mattie Prince, Leila A. Nicholson, Libbie Coxe, Winnie Phillips, and Altha Phillips filed objections to its admission to probate, upon the grounds that it was not witnessed or published as required by law; that, at the time of its execution, testator was not of sound and disposing mind, but was incapacitated to make a valid will; and that its execution was procured by fraud, duress, and undue influence. Later, Millie F. Rhinehart and Nell Flickinger, relatives, appeared, and joined in these objections to the probate of the will.

Testator, after the death of his wife, which occurred about 20 years before the will was executed, resided upon his old home farm alone, or with tenants living thereon. All of the legatees named in his will, except Ratcliff and Olena Johnson, are either his relatives or those of his deceased wife.

Evidence tending to establish both testamentary incapacity and undue influence was introduced by contestants, substantially all of which was contradicted by the witnesses for proponent. While it is urged by counsel for appellant that the verdict of the jury is without support in the evidence, a careful reading of the record satisfies us that a case was made for the jury, and we shall, therefore, confine our discussion to a review of the alleged errors relied upon by appellants for reversal.

I. H. B, McCoy, a member of the law firm of McCoy & McCoy, of Oskaloosa, appeared with other attorneys for proponent. Contestants filed objections to his appearance or participation in the trial on behalf of the proponent. The ground of these objections was that one of the attorneys for contestants, a few days before the case had been assigned for trial at a prior sitting of the court, sought to employ McCoy & McCoy and Burrell & Devitt, also of Oskaloosa, to assist in the trial of the case on behalf of contestants. A conference was had between Mr. Burrell and John N. McCoy of said firm, and T. J. Campbell, attorney for contestants, in which the nature of the case was discussed, and a proposition of employment submitted to the former. The Oskaloosa attorneys were unwilling to accept employment upon the terms proposed, but the matter was left open for further negotiations. Later, the attorneys for contestants notified McCoy & McCoy and Burrell & Devitt that they had decided not to employ them. Neither John N. McCoy nor Burrell & Devitt appeared upon the trial, and the latter firm had no connection with the case. The affidavits of T. J. Campbell, who represented the contestants, and of John N. McCoy and W. C. Burrell, on behalf of the proponent, were submitted. These affiants differ somewhat as to the extent to which the facts relied upon by counsel for contestants were revealed to McCoy and to Burrell. Campbell affirms that he stated in detail what he expected that each witness, so far as he had interviewed them, would testify, pointing out the strong and weak places in the contestants' case. The other affiants declare that they declined to accept employment upon the terms proposed by Campbell, and that the facts repeated by him consisted almost entirely of matters of record. The court overruled the objec-

1. ATTORNEY AND CLIENT: improper retainer.

tions, and the trial proceeded, with McCoy and other attorneys representing the proponent. We do not deem it necessary, in disposing of this question, to review authorities bearing upon the duty and responsibility of attorneys to their clients. They are well known and appreciated by the bar generally. None of the contestants at any time conferred with McCoy & McCoy, nor was that firm employed by them. Whatever the conversation was, it resulted in the rejection by contestants of the terms upon which the Oskaloosa attorneys were willing to accept employment. The objections were properly overruled.

II. Mattie Prince, one of the sisters of testator, testified as follows:

"I saw Ollie Johnson touch his person. She had her hand in under his belt, and he jerked it out and held it, this way. She looked at her hand, and looked at him and laughed. She came one time with slippers on, but no stockings, and threw her foot over his knee. She started to put her other one over, and he said, 'That is a little heavy;' and she took it off. She jerked his feet, and I said: 'Don't do that; that hurts him. He is too sick for that.' She was in working clothes, but she didn't have any hose on. Just bare, pretty near up to her knee. And she laid her leg right across his lap."

2. WITNESSES: competency under "dead man's statute:" denial of transaction.

Olena Johnson, called in rebuttal by proponent, over the objection of counsel for contestants that she was incompetent, under Section 4604 of the Code, to do so, was permitted to deny the above transaction. This ruling by the court is complained of. It is true, as we have frequently held, that a witness testifies in regard to a personal transaction no less when he denies than when he affirms a transaction with a party deceased. *In re Estate of Brown,* 92 Iowa 379, 388; *Garretson v. Kinkead,* 118 Iowa 383, 385; *In re Will of Winslow,* 146 Iowa 67; *Hart v. Hart,* 181 Iowa 527; *Tucker v. Anderson,* 172 Iowa 277; *Kauffman v. Logan,* 187 Iowa 670. But the statute creates an exception where the executor, administrator, heir-at-law, legatee, or devisee who is a party testifies in his or her own behalf. *Wood v. Brolliar,* 40 Iowa 591; *Canady v. Johnson,* 40 Iowa 587; *Bailey v. Keyes,* 52 Iowa 90; *Ivers v. Ivers,* 61 Iowa 721; *Ridler*

*v. Ridler*, 103 Iowa 470. The witness was, therefore, competent, and the objection was properly overruled.

Bert Galbreath was permitted, over the same objection, to testify that the personal property on the 640-acre farm in North Dakota was owned in partnership by testator and himself.

3. WITNESSES: competency under "dead man's statute:" facts otherwise shown.

Whether erroneous or not, the ruling was without prejudice. The will recited the same fact, and one or more competent witnesses testified thereto. No evidence was offered to the contrary.

III.  Nancy Champion, the surviving widow of testator's brother, and Leila A. Nicholson, one of the contestants, were asked by counsel for contestants whether, in any of the conversations had by testator in their presence, during his last illness, he talked coherently and connectedly. The answers to these questions were excluded, upon objection of counsel for appellee. The witnesses were, however, later permitted to testify in detail as to their observation of testator, and as to his ability to coherently carry on a conversation. The testimony was doubtless as favorable to contestants as the most favorable direct answer to the above questions would have been. *Zinkula v. Zinkula,* 171 Iowa 287.

IV.  Mattie Prince testified at length to the appearance of testator, reciting many facts tending to show mental weakness. She was asked, upon cross-examination, if she did not,

4. WITNESSES: impeachment: contradictory statements out of court.

in the presence of Walter Mason and Edgar Ratcliff, state that she was glad testator knew everything, up to the last. She denied having so stated. Witnesses were permitted, in rebuttal, to testify that she did so state in their presence. This testimony was offered solely for the purpose of impeachment, and was clearly competent therefor. The objection of counsel that it was hearsay and incompetent was not well taken. Counsel also complain, in a motion for new trial, that the court did not safeguard the rights of contestants as to this evidence. No instruction was asked; and, so far as disclosed, the matter was not, at any time, called to the attention of the court.

V.  Counsel for contestants excepted to numerous paragraphs of the court's charge, in substance as follows: To Para-

graph 2 thereof, upon the ground that the court erroneously withdrew the issues of legal fraud and duress from the consideration of the jury; to Paragraph 11, upon the ground that the court did not instruct the jury that a mental condition once proved to exist, if of a permanent character, is presumed to have continued, in the absence of evidence to the contrary to overcome the same; to Paragraph 12, upon the ground that the court therein directed the jury not to consider evidence of the value of testator's property, as bearing upon the issue of undue influence; to Paragraph 15, upon the ground that said instruction erroneously permitted the jury to consider, as bearing upon the issue of undue influence, declarations made in certain deeds executed by testator, a few days before the will, as to the disposition of his property; to Paragraph 19, upon the ground that the court erroneously omitted therefrom the names of several parties who, the evidence tended to show, exercised undue influence over the testator in the execution of his will. A similar exception was taken to Paragraph 20.

*5. TRIAL: instructions: applicability to evidence.*

The exceptions to Paragraphs 2, 11, and 12 of the charge are without merit. We find no evidence whatever in the record tending to sustain the claim of duress or of legal fraud, except in so far as the same is involved in the issue of undue influence. The testator is not shown to have been afflicted with a progressive mental disease, nor does the evidence indicate that his mind was permanently impaired. No instruction embodying this theory of appellants' was submitted by the court, or requested. The defendant was suffering from a disease of the heart. It is not claimed that he was afflicted with senile dementia or other mental disease.

Paragraph 17½ specifically and fully covers the matters which appellants claim were erroneously omitted from Paragraph 12.

The record does not disclose the contents of the deeds referred to in Paragraph 15 of the instructions, and we do not, therefore, know what declarations by the testator are referred to therein. These deeds were, as we understand the record, executed a few days prior to the will. Same declarations made both before and after

*6. WILLS: undue influence: declarations.*

the execution of a will may be admissible as bearing upon the state of testator's mind, and may be considered upon the issue as to whether he had, in fact, been influenced. So far as disclosed by the record, the instruction is not erroneous. *Zinkula v. Zinkula,* supra; *Graham v. Courtright,* 180 Iowa 394.

Likewise, the exception to Instructions 19 and 20 cannot be sustained. The record reveals no evidence from which the jury could have found that the several parties whose names were omitted from these instructions exercised any degree of influence over testator. During his last illness, he lived at the Johnson home, and was cared for by the members of the Johnson family and certain of his relatives. Ella Galbreath, a niece of his deceased wife's, one of the parties referred to, spent some time at the Johnson home, assisting to care for him. The evidence does not, however, disclose that she was more than ordinarily attentive to him, and her conduct seems to have been wholly disinterested, and for the sole purpose of caring for and ministering to his wants.

VI. Appellants also complain of the refusal of the court

7. TRIAL: refusal of requested instructions: failure to except.

to give their requested Instruction No. 4. No proper exception was preserved to the ruling of the court. *Anthony v. O'Brien,* 188 Iowa 802.

VII. Some hours after the cause was finally submitted, the court caused the jury to be brought in, and further instructed them as to their duty. In one place in this instruction, he used

8. TRIAL: instructions: urging verdict.

the word "agreements" for the word "arguments." The meaning and purport of the instruction as a whole is too clear to have been misunderstood by the jury. The language of the instruction was carefully guarded by the court, who simply told the jury to continue the discussion of the evidence, to lay aside pride of opinion, and to get together, if they conscientiously could do so. We cannot reverse on account of this instruction.

Some other matters are discussed by counsel, all of which have been given careful consideration, although not separately mentioned herein. We find no reversible error in the record, and the judgment of the court below is, therefore,—*Affirmed.*

WEAVER, C. J., LADD and ARTHUR, JJ., concur.