## In re Estate of Samuel Armstrong.

### Ruth Etta Armstrong et al., Appellants, v. Edgar N. Armstrong, Appellee.

**EVIDENCE: Competency—Incompetent Nonexpert Opinion.** The opinion of a nonexpert witness that a person is insane, based in part on matters not divulged to the jury, is incompetent.

**EVIDENCE: Opinion—Competency.** A nonexpert opinion that a person is of unsound mind may be received when the detail of fact lends some fair support to the opinion.

**WILLS: Contest—Competency of Evidence.** On a will contest involving the soundness of mind of testator, testimony by the contestant as to the amount of money inherited by him from his mother, and what he did with the inheritance, held competent.

**WITNESSES: Transaction With Deceased—Opening Door to Testimony.** Testimony by an heir in his own behalf that he personally knew that proponent (in a will contest) had been paid for services rendered for testator, opens the door to proponent to testify that he had never received any pay for said services.

*Appeal from Cedar District Court.*—F. F. Dawley, Judge.

### June 25, 1921.

### Petition for Rehearing Dismissed by Appellant September 23, 1921.

This action involves a contest on the will of Samuel Armstrong, deceased. The jury returned a verdict that the testator, at the time of executing the alleged will, was of unsound mind, and judgment was entered on said verdict, denying admission of said will to probate. Proponents appeal. On motion, the court taxed the costs against the estate, from which ruling the contestant prosecutes a cross-appeal.—*Reversed.*

*Henry Negus, Hamiel & Mather,* and *J. C. France,* for appellants.

*C. J. Lynch* and *George C. Hoover,* for appellee.

FAVILLE, J.—I. Both parties having appealed, the proponents will be referred to as "appellants," and the contestant as "appellee." The appellee is the son and the appellants are the nieces of the testator.

The testator, Samuel Armstrong, came from Ohio some time in the 70's and located on a farm near West Branch, Iowa. His wife died in 1871, leaving the appellee, who is now about 53 years of age, as her only child. The testator never remarried. The appellee and his father for many years carried on business together, owning a considerable amount of real estate and personal property; and, at the time of the death of the testator, the father and son together had property of a net value of approximately $100,000. The testator was a lover of fine horses and a devotee of race tracks, having owned as high as 70 head of race horses at one time. The business, however, does not appear to have been profitable, at least from the standpoint of the owner of the horses.

The appellant Alice Armstrong went to live in the family of the testator in 1879, and kept house for the testator for 22 years. The appellant Ruth Etta Struble came to the Armstrong home in about 1885, and remained there until she was married, in December, 1897. The appellee was married at a time when both of the appellants were living in the family; but, shortly after his marriage, the appellee and his wife moved into another house on the premises.

During the last three or four years of his life, the testator lived more or less at the Struble home, and was there in May, 1917, when the will was executed. By the terms of the will, $1,000 is bequeathed to the appellant Alice Armstrong, $3,480 to the appellant Ruth Etta Struble, and all of the remainder of the estate is given by the terms of the will to the appellee. The will was executed on May 1, 1917, and the testator died on January 21, 1919. At the time the will was drawn, no one was present with the testator except the scrivener who drew the same. He was a business man, who had known the testator for many years. Regarding the making of the will, he testified that the testator told him that he would like to make a will, and wanted him to write it; that he talked of how he would like to dispose of his property; that he told him that, at the time Ruth

Etta came to the house, she brought some money with her, and he felt as though he would like to repay her that money with interest, as a legacy in the will; that he made the same statement in regard to Alice Armstrong, but that the amount was smaller. He told the scrivener to call Mrs. Struble and get the note that she held, and had him figure up the principal and interest, without compounding it. The note was given in May, 1886, and was due six years from date. The amount inserted in the will as a legacy to Mrs. Struble was the amount determined by the scrivener as being due on the note. In regard to the legatee Alice Armstrong, the scrivener testified that the testator told him to make it just $1,000. The witness said that, at the time, the testator discussed with him something about the value of the property, especially about the Canada land, as he believed it to be a poor investment; that he said his son Ed was a good boy and loved his children, and he regretted that there were any differences between the Strubles and them. The will was witnessed by the scrivener and by the doctor who attended the testator.

About two months before the execution of the will, the testator joined with the contestant in executing a note and mortgage of $10,000. After the death of the testator, the contestant filed an application for the admission of the will to probate, which he subsequently withdrew, and filed a contest.

The only ground of contest in the case is on the claim of mental incapacity on the part of the testator. A large amount of evidence was offered by both parties on this question, and it will serve no useful purpose for us to set it out in detail. The evidence of numerous witnesses, including one expert, in behalf of the appellee tended to show a want of mental capacity on the part of the testator; while, on behalf of the appellants, a large number of witnesses, including the attending physician, testified that the testator was of sound mind. On the whole, the evidence discloses the not unusual situation of an old man afflicted with physical ailments and affected with eccentricities and peculiarities. The deterioration incident to old age is apparent.

The sufficiency of the evidence to sustain the verdict of the jury is challenged on this appeal. In view of the fact that we

find it necessary to reverse the case on other grounds, and the further fact that, upon a retrial of the case, if such trial is had, there may be further and additional testimony offered by one or both parties, we refrain at this time from determining the question of the sufficiency of the evidence to sustain the verdict. If the case were triable here *de novo,* and the credibility of the witnesses and the weight and value of their testimony were matters for our determination, some of us would be of the opinion that there was a failure of proof to show such mental unsoundness as would invalidate the will. Indeed, some of the court entertain doubt of there being sufficient evidence to sustain the verdict of the jury, and believe that, for that reason, a new trial should have been granted.

II. A nonexpert witness, Mrs. Armstrong, the wife of the appellee, was permitted to testify that, in her opinion, the testator was of unsound mind. On cross-examination, it appeared

1. EVIDENCE: competency: incompetent nonexpert opinion.

that she based her opinion in part upon matters detailed to the jury and in part upon matters which she observed during her acquaintance with the testator, and which she did not detail to the jury as the basis for her opinion. The appellants moved to strike out the testimony of this witness on this subject, which motion was overruled. It should have been sustained. It is a settled rule in this state that a nonexpert witness must base his opinion, when called upon to testify touching mental unsoundness, upon the facts previously detailed by him in evidence. *In re Estate of Burgin,* 186 Iowa 928; *In re Will of Norman,* 72 Iowa 84; *Spiers v. Hendershott,* 142 Iowa 446; *Bales v. Bales,* 164 Iowa 257.

III. Error is predicated upon the overruling of objections of appellants to questions asked various witnesses for the appellee respecting their opinions as to the soundness of mind of the testator. The specific objection urged is that

2. EVIDENCE: expert opinion: competency.

the facts detailed by these nonexpert witnesses are not sufficient to form the basis of a nonexpert opinion. It must be conceded that, in some instances, the testimony in this regard is very meager; but the witnesses appear to have had some knowledge of the subject-matter, and to have detailed the matters observed and known by them, upon which the nonexpert opinion was based. There was some evi-

dence offered by each. witness to support the opinion expressed, and whether the facts detailed by the several witnesses were sufficient to justify such opinion was a matter, under the record, for the determination of the jury. There was no reversible error here.

IV.  Complaint is made of the overruling of an objection to the testimony of the appellee in regard to how much money he inherited from his mother's estate, and that he put the same into the farm which was held in partnership with the testator. The objection to this evidence was not well taken. It was proper for the appellee to show how much money he had invested in the farm, and also the sources from which he obtained the same.

3. WILLS: contest: competency of evidence.

V.  On direct examination, the appellee testified in his own behalf that the appellant Alice Armstrong kept house for his father during a period of 21 or 22 years. On cross-examination, he testified:

4. WITNESSES: transaction with deceased: opening door to testimony.

"She came to our house and kept house there for 20 years. That was all the settlement that was ever made that I know of."

On redirect examination, he testified:

"We paid for Alice Armstrong's clothing and support during all the time she was at our home, and she got milk checks and egg money for her own."

On redirect examination, the witness also testified that, excluding anything he may have learned from any talk with his father, he knew that his father did not owe Alice Armstrong any such money.

After this testimony in behalf of the appellee, the appellant Alice Armstrong was asked this question:

"Did you ever receive any pay for the 22 years you worked and kept house for Mr. Armstrong?"

It was objected that the witness was incompetent, under Section 4604 of the Code. Objection was sustained.

We have repeatedly held that Section 4604 of the Code prohibits a witness from testifying in denial of a personal transaction with decedent, as well as in affirmance of such transaction. *In re Estate of Brown,* 92 Iowa 379; *Tucker v. Anderson,* 172

Iowa 277; *In re Will of Winslow*, 146 Iowa 67; *Hart v. Hart*, 181 Iowa 527; *Kauffman v. Logan*, 187 Iowa 670. It is insisted in behalf of the appellants, however, that the statute by its terms creates an exception where the executor, administrator, heir at law, legatee, or devisee, who is a party, testifies in his own behalf. The statute itself provides for such exception, and we have recognized it in repeated decisions. *Wood v. Brolliar*, 40 Iowa 591; *Canaday v. Johnson*, 40 Iowa 587; *Ridler v. Ridler*, 103 Iowa 470; *In re Estate of Champion*, 190 Iowa 451.

The testimony of the appellee to the effect that ''we paid for Alice Armstrong's clothing and support during all the time she was in our home, and she got milk checks and egg money for her own,'' opened the door for the appellant to testify in respect to whether she was so paid for the labor she performed at the home of the testator. By using the term ''we paid,'' the appellee could have referred, under the circumstances, to no one but himself and his father; and the appellant was entitled, in rebuttal, to testify whether she did receive such pay. As bearing on this question, see *Bailey v. Keyes*, 52 Iowa 90; *Ridler v. Ridler*, supra.

The objection should have been overruled.

VI.  Error is predicated upon the ruling of the court, overruling objections to the testimony of the appellee in regard to the payments on a certain note. The objections were properly overruled. The questions did not involve transactions with the testator, and the witness was not disqualified to testify, under Code Section 4604.

VII.  It is strenuously contended that the court erred in overruling the appellants' motion for a continuance. As we reverse the case on other grounds, and the question is not likely to arise upon a retrial of the case, we do not deem it necessary to determine the question.

VIII.  Following our ruling in *McElfresh v. McElfresh*, 186 Iowa 994, the trial court taxed the costs of the case to the estate of the decedent. Because of the reversal of the cause, the order taxing the costs will be vacated and set aside, and the matter left for the determination of the trial court if the question should arise in the further progress of the case, as the situation may then appear. Costs in this court will be taxed to appellee.

For the errors pointed out, the cause must be and the same is—*Reversed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.